IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAMIS FELLOVE,**

    **Plaintiff,**

v.                                             **Civil Action No. 3:05cv34**
                                                                 **(Judge Bailey)**

**DANE HEADY,**

    **Defendant**

## REPORT AND RECOMMENDATION/OPINION

### I. Procedural History

The *pro se* plaintiff initiated this case on April 21, 2005 by filing a civil rights compliant, pursuant to the doctrine announced in <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, <u>et</u> <u>seq</u>. In the original compliant, the plaintiff named several Bureau of Prisons ("BOP") employees as individual defendants. On March 13, 2006, the undersigned, in a Report and Recommendation/Opinion, recommended that both the ADA claims and the <u>Bivens</u> action be dismissed because the ADA does not apply to the federal government and because the plaintiff only named individuals acting in their official capacities.

On April 14, 2006, the plaintiff filed a Motion to Amend his original complaint. On May 4, 2006, the Court entered an Order permitting the plaintiff to amend his compliant and referred the case back to the undersigned for consideration of the amended claims.

On August 3, 2007, the undersigned entered a Report and Recommendation/Opinion on plaintiff's amendment complaint. In the Opinion, the undersigned determined that the plaintiff had

shown personal involvement on the part of the defendant in an alleged violation of the plaintiff's constitutional rights. Hence, the undersigned recommended that the defendant be made to answer the complaint. However, regarding the other named-defendants and possible Bivens violations, the undersigned did not find sufficient personal involvement to warrant any liability. Therefore, the undersigned recommended that the remaining individual defendants be dismissed. On January 22, 2008, the Court entered an Order adopting the Report and Recommendation/Opinion, dismissed the ADA claims, and ordered the defendant to be served.

On March 28, 2008, the defendant filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. A Roseboro Notice was issued a week later.

On July 7, 2008, the plaintiff filed a Response to the Defendants' Motion to Dismiss and filed a Motion for Summary Judgment.

This case is before the undersigned for a Report and Recommendation on the defendant's Motion to Dismiss or for Summary Judgment and plaintiff's Motion for Summary Judgment.

## II. The Pleadings

**A. The Complaint**

On April 21, 2005, the plaintiff, a federal inmate currently incarcerated at the Federal Correctional Institution in McRae, Georgia ("FCI McRae"), filed this *pro se* complaint under 28 U.S.C. § 1983, in accordance with Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388,(1971) and the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. In the subsequent amended complaint, plaintiff alleges that the defendant retaliated against him by "exercising his constitutional rights [sic] under the First Amendment to File [sic] for grievance and or raise complaints." See Amended Complaint (dckt. 16) Attachment A. The plaintiff, who is unable to hear

2

or speak, asserts that the defendant retaliated against him when the plaintiff complained to the Warden at FCI Gilmer that the prison phone system did not provide language translation for him when using the Teletypewriter ("TTY") machine for conversations with his mother.[1] Because the plaintiff directly took his complaint to the Warden instead of the defendant, the plaintiff asserts that the defendant took offense and retaliated against the plaintiff. According to the plaintiff, the retaliation took the form of monetary sanctions[2] and suspension of phone privileges. Because of the alleged retaliation, the plaintiff seeks $750,000 in compensatory damages and an unspecified amount of punitive damages. Furthermore, plaintiff prays for FCI Gilmer to correct the violations and to stop discriminating against disabled inmates.

According to the record, the plaintiff was housed at FCI Gilmer starting in May 2003. At this time, the plaintiff was assigned to C Unit, where the defendant was Unit Manager. When plaintiff arrived at FCI Gilmer, the facility acquired a TTY machine to assist the plaintiff with any phone conversations. When plaintiff wanted to place a phone call, he would notify the Unit Counselor who kept the TTY machine in her office.

In June 2004, the plaintiff filed an administrative complaint against FCI Gilmer and its staff. According to the plaintiff, FCI Gilmer's staff had discriminated against the plaintiff based on his disability. In his administrative complaint, the plaintiff alleged the following seven grievances: (1) he was not permitted to participate in most prison jobs because FCI Gilmer was not properly

---

[1] According to the plaintiff, his mother speaks only Spanish. Furthermore, because of his disability, plaintiff is unable to communicate verbally with his mother over a normal telephone line. Thus, the plaintiff seeks a TTY machine that can translate from English to Spanish and vice versa.

[2] Plaintiff asserts that the defendant claimed that the plaintiff would have to pay for all of his phone calls made with the TTY machine.

equipped to house him; (2) he could not hear the public announcer, thus he was unable to wake for work call, breakfast, or inmate moves; (3) he was not afforded a flashing light fire sensor in his cell; (4) he was not afforded movies with close captioning; (5) he could not use the TTY at the same hours as the hearing inmates; (6) he was unable to speak with his mother because the TTY machine was in English and could not be translated into Spanish in order to communicate with his mother; and (7) he did not have access to a staff member that was certified in sign language or a translator machine. In the administrative compliant, the plaintiff prayed for immediate transfer to another facility or for FCI Gilmer to implement the necessary relief.

In response to the plaintiff's complaint, the Warden at FCI Gilmer stated that numerous concessions had been made for the plaintiff. The concessions included: (1) assigning an inmate to wake the plaintiff for work call and, in the case of an emergency (fire), to ensure he was awake; (2) making unit officers aware of the plaintiff's disability and the need to check on the plaintiff in case of an emergency; (3) trying to attempt to acquire movies with close captioning abilities; and (4) providing for TTY machine, despite not being able to translate from English to Spanish or vise versa.[3] The Warden also stated that the plaintiff was allowed to freely communicate with his mother and the staff through written communications. Therefore, the Warden denied the plaintiff's request for relief.

Upon receiving the Warden's denial, the plaintiff appealed the decision to both the Regional

---

[3] It should be noted that the Warden did not rule out the possibility of obtaining a TTY machine with a translation function. In the response, the Warden states that he did inquire into the availability of an English to Spanish translation TTY machine, but was unable to find a TTY machine with this capability. However, the Warden noted that if the plaintiff was aware of a TTY machine that could perform the necessary translation, the plaintiff should provide staff with the information so an inquiry into its availability could be secured.

Director and the Central Office. In each appeal, the Regional Director and the Central Officer affirmed the Warden's denial of the plaintiff's complaint. According to the record, the plaintiff has filed no other administrative complaints while at FCI Gilmer.

**B.     The Defendant's Motion**

In his motion, the defendant asserts that the plaintiff's retaliation claim should be dismissed because the plaintiff failed to exhaust all his administrative remedies. The defendant states that the plaintiff failed to make any retaliation claims in any of his previous administrative complaints. Therefore, the plaintiff has not properly exhausted all of his administrative remedies. Furthermore, the defendant asserts that as a federal executive officer, he is protected from constitutional tort claims through the defense of qualified immunity. Lastly, the defendant asserts that the plaintiff has failed to show any evidence of retaliation by the defendant.

**C.     The Plaintiff's Reply**

In his reply motion, the plaintiff asserts that he did exhaust his administrative remedies regarding his retaliation claim. Furthermore, the plaintiff asserts that the doctrine of qualified immunity does not bar the defendant from the present action. Last, plaintiff contends that he has pleaded enough facts to demonstrate a retaliation cause of action.

### III.   Standard of Review

**A.    Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the well-pleaded material factual allegations. Advanced Health Care Services, Inc., v Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the

allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957)

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.      Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth or limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue at trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere

allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

**A.  Exhaustion**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provided in § 1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. § 1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002). Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Furthermore, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 848 U.S. 81 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege that

7

he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmates's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

According to the record, the plaintiff has not satisfied the preliminary requirements of exhaustion in connection with his retaliation claim. Plaintiff has followed the administrative procedures in regards to his other claims. However, none of his previous administrative forms contain any mention or statement regarding retaliation claims. See Motion (dckt. 30) Exhibit 1, Attachment G. Contrary to the plaintiff's misguided interpretation, even the most liberal interpretation of his previous forms does not show a minute speck of any discrimination and equal protection allegations. Id. Therefore, because the plaintiff has failed to file any administrative action regarding the alleged retaliation, exhaustion has not been completed and plaintiff's contention must be dismissed.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss, or for Summary Judgment (dckt. 30) be **GRANTED** and that the complaint be **DISMISSED without prejudice**. Additionally, the undersigned recommends that the plaintiff's Motion for Summary Judgment (dckt. 36) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 16, 2008

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE